Sidney Squire, J.
Claimant seeks $50,000 for the defendant’s alleged negligence arising out of an assault by James Strickland at Rockland State Hospital where both were patients. The defendant maintained and operated said hospital.
On April 26, 1954 at approximately 6:45 a.m., claimant and Strickland were among 25 patients of ward 16 in its water section comprised of a lavatory, water room and shower. Those in ward 16 including Strickland, were regarded as the ‘ ‘ most disturbed and unpredictable” patients.
Claimant had been admitted to the hospital on April 15, 1954, 11 days before the occurrence. Strickland had been there for over three months, since January 7, 1954.
On the morning stated, without prior warning, Strickland assaulted the claimant, knocking him to the floor where they continued to struggle. As a result, Robinson required treatment at the Medical-Surgical Building of the hospital from the date of the attack until June 4, 1954.
He sustained the following injuries: compound fracture of the left mandible, simple fracture of right mandible with displacement and partial facial paresthesia. He suffered from pain. His jaws had to be wired. He had a “ good result” according to Dr. Auerswald. There was no proof of resultant loss of earnings or value of the medical services entailed.
On the trial there was a sharp issue of fact as to whether any hospital attendant was in the room when the assault took place. We were not favorably impressed with the testimony thereon given by claimant and another former patient, Harold E. Remmele. The latter did not see the assault but was in the section when it occurred. His testimony was far from satisfactory, being obviously biased in favor of claimant and prejudiced against the State. We prefer to believe the State’s employee, Vernon Long, whose examination before trial was read into the record. It is a more believable recital of facts. The quality of his testimony outweighs that of claimant’s proof, regardless of the greater number of witnesses.
Long testified with respect to the altercation which had taken place. Claimant maintained that Long was not present at *777 the time. On this issue of fact, we find that Long was present. He was standing in the center of the room at the time. The assault occurred so quickly that neither this State employee nor anyone else could have prevented it. As claimant said, ‘1 It all happened so fast, and all of a sudden I knew I was hit, 1 boom ’. Immediately preceding the actual blow I wasn’t aware that he was coming at me, or naturally, I would have ducked.” Strickland who had been sitting* on a bench with others, arose suddenly and struck claimant on the left lower jaw, propelling the latter to the ground and grappling with bim.
Claimant places great stress upon the contents of claimant’s Exhibit No. 5, Long’s “accident report” re the occurrence. This is a form used by the defendant at the hospital. One of the portions thereof to be filled in, is 11 Witnessed by: name of patients and employees in vicinity:”. Long filled in the name of another patient. Long had not actually seen the assault. Accordingly, he could not report that he had “witnessed” it because he had not been an eyewitness. We belive that he was telling the truth when he filled out the report and also when he testified relative thereto.
Before the occurrence there had been two attendants present. One of them left and Long remained. He could not have prevented the assault. The presence of almost 25 other patients did not prevent the assault.
As a matter of law, the State is not compelled to provide individual supervision for every mental patient. The State is not an insurer of the safety of such patients. Claimant has not sustained his burden of proving that the State failed to use reasonable care against a foreseeable occurrence.
As stated in the Per Curiam memorandum of the Appellate Division in Feitelberg v. State of New York (284 App. Div. 1086): “ The proof did not establish that the number of attendants assigned to the ward was inadequate.” There, claimant had utilized expert testimony which was contradicted by a State expert. In our case, claimant had no expert proof.
In Kowalski v. State of New York (7 A D 2d 762), decided after this trial, the same appellate court wrote that “No proof was offered medically as to * * * what constituted the proper method of supervision in a mental institution or any acts which might constitute negligence. The State offered no testimony. Negligence may not be presumed from the mere happening of an accident. It was incumbent upon the part of the claimant to show affirmatively by competent evidence that the death of the decedent was caused by reason *778 of some breach, of duty on the part of the State. Negligence must be proven. (McCabe v. State of New York, 190 Misc. 11, affd. 273 App. Div. 1048; Flaherty v. State of New York, 296 N. Y. 342.) There is no showing of negligence on the part of the State here”. Said language and legal reasoning are apropos at bar.
Claimant has not sustained his burden of proving that any State act or failure to act was a proximate cause of the assault. Accordingly, the defendant cannot be cast in damages upon this record. The claim must be dismissed.
The State’s motions to dismiss (on which decisions had been reserved during the trial) are granted.
This claim has not been assigned nor submitted to any other court or tribunal for audit or determination.
The stenographic minutes of the trial were received by us on May 4, 1959. At the trial’s conclusion, counsel had stipulated that we should render a decision and then grant them about 10 days to submit proposed findings of fact and proposed conclusions of law, if desired. The same are to be exchanged and submitted on or before June 22, 1959. After they have been passed upon, the clerk will receive appropriate directions with respect to the entry of judgment herein.